FILED
SUPERIOR COURT
OF GUAM

2019 OCT -3 AM 11: 25

CLERK OF COURT

By:____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM,<br><br>vs.<br><br>BRANDON MICHAEL ACOSTA,<br><br>Defendant. | CRIMINAL CASE NO. CF0640-18<br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on August 21, 2019, for hearing on Defendant Brandon Michael Acosta's ("Defendant") Motion to Suppress Any Information Stemming From and Including Two Brown Shorts, Slippers. Defendant was present with counsel, William B. Pole, and Assistant Attorney General Leonardo M. Rapadas was present on behalf of the People of Guam ("the Government"). Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order DENYING Defendant's Motion to Suppress.

## BACKGROUND

Defendant is charged with four counts of Aggravated Murder (As a First Degree Felony); two counts of Murder (As a First Degree Felony); two counts of First Degree Criminal Sexual Conduct (As a First Degree Felony); two counts of Second Degree Criminal Sexual Conduct (As a First Degree Felony); one count of Home Invasion (As a First Degree Felony); one count of Burglary (As a Second Degree Felony); one count of Aggravated Assault (As a

Second Degree Felony); and two counts of Third Degree Criminal Sexual Conduct (As a Second Degree Felony); along with Special Allegation: Possession or Use of a Deadly Weapon in the Commission of a Felony and Notice: Commission of a Felony While on Felony Release attached to each felony charge. (Superseding Indictment, Jul. 12, 2019). These charges stem from allegations that Defendant sexually assaulted and caused the death of Timicca Nauta in her home on or about June 16, 2018 during the commission of a burglary. (Decl. of Jeremy S. Kemper, Magistrate's Compl., Oct. 20, 2018).

On July 17, 2019, at Arraignment for the Superseding Indictment, Defendant asserted his right to a speedy trial.

On July 19, 2019, Defendant filed a Motion to Suppress Any Information Stemming From and Including Two Brown Shorts, Slippers ("Second Motion to Suppress"). On August 7, 2019, the Government filed its Opposition. On August 9, 2019, Defendant filed an Errata, clarifying that the shorts sought to be suppressed were color gray and not brown. On August 12, 2019, Defendant filed his Reply to the Government's Opposition. On August 15, 2019, at the calendared Motion Hearing, the Government requested a continuance to be able to respond to Defendant's Second Motion to Suppress in light of the August 9, 2019 Errata. On August 20, 2019, the Government filed a Supplemental Opposition.

On August 21, 2019, the Court heard sworn testimony from Guam Police Department ("GPD") Detectives Carl J. Lizama and Erik A. Barcinas (hereinafter "Detective Lizama" and "Detective Barcinas," respectively). The Court then gave the parties leave to file any proposed findings pursuant to the testimony received.

On August 30, 2019, Defendant filed his proposed Findings of Fact and Conclusions of Law. On September 9, 2019, the Government filed its Proposed Findings of Fact and Conclusions of Law. The Court subsequently placed the matter under advisement.

### DISCUSSION

Defendant moves the Court to suppress two gray pairs of shorts as well a pair of Scott brand black slippers seized by GPD officers on June 20, 2018. *See generally*, Second Mot. Suppress, Jul. 19, 2019. Defendant argues that these items were taken without his consent and

were beyond the scope of a Search Warrant effectuated that same day. *Id.* The Government opposes, arguing that the officers had probable cause to seize the items without consent. (Supp. Opp'n, Aug. 20, 2019).

The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf,* 2001 Guam 1 ¶ 14 (internal citations omitted). "A search or seizure made without a warrant is presumed to be unreasonable. In the absence of a warrant, the police may lawfully conduct a search or seizure only if an exception to the warrant requirement applies." *Id.* "Exceptions include voluntary consent to the search, as well as police officers' good faith reliance on a defective search warrant and the plain view doctrine." *People v. Cundiff,* 2006 Guam 12 ¶ 42.

In this case, a Search Warrant was executed on June 20, 2019 at Defendant's residence, pursuant to a burglary investigation.[1] The Search Warrant identified the following items: Stihl brand blowers, Stihl chainsaws, a DeWalt pressure washer, and bolt cutters. The Search Warrant effectuated did not include the gray shorts and black slippers. No testimony came forward at the Suppression Hearing indicating that Defendant consented to the seizure of the shorts and slippers. The issue before the Court is whether the plain view doctrine allowed for GPD's warrantless seizure of the gray shorts and slippers.

"When an item is in plain view, 'neither its observation nor its seizure would involve any invasion of privacy,' and therefore the plain view exception to the warrant requirement implicates the protection from unreasonable seizures, rather than unreasonable searches." *United States v. Carmack,* 426 F. App'x 378, 381 (6th Cir. 2011) (quoting *Horton v. California,* 496 U.S. 128, 133-34 (1990)). "If 'plain view' justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches." *Horton,* 496 U.S. at 134. "An

---

[1] The Search Warrant also sought phone records from Guam Telephone Authority, which is not at issue in this Motion.

example of the applicability of the plain view doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." *Id.* at 135 (citation omitted). "It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Id.* at 136. To further justify a warrantless seizure, "not only must the item be in plain view; its incriminating character must also be 'immediately apparent.'" *Id.* (citations omitted). "Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself." *Id.* at 137.

In this case, officers had a Search Warrant to search Defendant's residence for Stihl brand blowers, Stihl chainsaws, a DeWalt pressure washer, and bolt cutters. At the Suppression Hearing, Detective Lizama testified that Defendant was not home when they arrived to execute the Search Warrant, but that Defendant's mother was present at the residence. Defendant appeared at the residence later on, and was transported to the CID Office in Tiyan to be interviewed about the burglaries. Detective Lizama testified that during the interview, Defendant identified clothing he was wearing at the time of the suspected burglaries, which he relayed to Detective Eric Barcinas who was executing the Search Warrant. Detective Lizama testified that Defendant consented to certain items to be confiscated from his person while at CID. Those items included a buccal swab, a black cellphone, white checker shorts, and a swabs shirt.

Detective Barcinas testified that he effectuated the search warrant at Defendant's residence, and searched the house for the items listed in the Search Warrant. Detective Barcinas testified that during his search of the residence, he looked through a laundry basket full of clothes and through a pile of clothes on the washing machine outside the residence because he was looking for the bolt cutters listed in the Search Warrant. Detective Barcinas testified that he received information from other officers who were interviewing Defendant at CID as to what

Defendant may have been wearing during the time of the alleged burglaries, which included gray shorts and/or gray plaid shorts, and black slippers.

The scope of a search "is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase." *Horton*, 496 U.S. at 140 (citation omitted). *See also, People v. Camacho*, 2004 Guam 6 ¶ 22. Detective Barcinas was lawfully in the position or place from which he viewed the object. The lawful search of Defendant's residence for the bolt cutters could extend to the laundry basket full of clothes, and the pile of clothing on top of the washing machine outside the residence.

Next, the Court must determine whether the incriminating character of the items was "immediately apparent." *See Horton*, 496 U.S. at 136. The "incriminating nature of an item is immediately apparent where the officer has probable cause to associate the property with criminal activity." *Camacho*, 2004 Guam 6 ¶ 25. "The determination of whether the officers had probable cause to believe that the items seized were illegal, unlawful, or associated with criminal activity is objective, but we apply it to the actual and/or perceived belief of the law enforcement officer as he engages in search and seizure." *United States v. Stafford*, 416 F.3d 1068, 1076 (9th Cir. 2005) (internal citations, quotation marks, and alteration omitted). "[P]lain view provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. Plain view is perhaps better understood, therefore, not as an independent exception to the warrant clause, but simply as an extension of whatever the prior justification for an officer's access to an object may be." *Texas v. Brown*, 470 U.S. 730, 738-39 (1983) (quotation marks omitted). The Supreme Court of the United States recognized that "the use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine." *Brown*, 460 U.S. at 741. The Court concluded that "immediately apparent" was intended to

merely be a "statement of the rule . . . requiring probable cause for seizure in the ordinary case." *Id.* at 742. "[P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime." *Brown*, 470 U.S. at 742 (citing *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

"Immediately apparent" has been interpreted not "to connote apparent at first glance, but rather, apparent without other information than that which the officers properly possessed before their search was over." *United States v. McDonald*, 723 F.2d 1288, 1295 (7th Cir. 1983) (citations omitted). Thus, the viewing officers must have probable cause to believe an item in plain view may be associated with criminal activity before seizing it, and such probable cause must arise while the officers are still lawfully on the premises. The Court finds that "immediately apparent" does not necessarily mean "quickly apparent." "Rather, 'immediately apparent' in this context means without the necessity of any further search." *State v. Dobbs*, 323 S.W.3d 184, 187-89 (Tex. Crim. App. 2010). In *Dobbs*, for example, the Texas Court noted:

> Suppose that at the instant the officers executing the search warrant had originally come across the golf clubs and shirts, they had thought nothing of it and conducted no further investigation of those items. Then suppose an officer in the burglary division had called one of the searching officers to inform him to be on the lookout for stolen golf clubs and shirts on the premises, describing them with particularity, because of probable cause the burglary division had just developed, independently of the officers executing the warrant, to believe these items were stolen. What was not "immediately" apparent to the searching officers would now be readily apparent, while the officers are still on the premises and legitimately conducting their search. They would now have probable cause to seize the stolen items. Under these circumstances, it makes no more sense to require an additional warrant to justify seizing the items than it would to require a warrant to seize apparent contraband that is found in a public place. Moreover, it should make no difference that the searching officers generated their own probable cause while still on the premises, so long as their investigation did not entail any greater intrusion on the premises (from which the defendant's privacy interest, after all, derives) than the intrusion already legitimately underway.

*Dobbs*, 323 S.W.3d at 187–88.

In this case, although Detective Barcinas testified that when he began the search of the residence pursuant to the warrant the items in question had nothing to do with the burglary, such items were not seized until after he received information from officers conducting the interview with Defendant at CID that there were gray shorts and black slippers involved. Detective Barcinas then had probable cause to seize items he observed in plain view which he believed could be evidence of a crime. Detective Barcinas testified that he retrieved one pair of gray shorts from the laundry basket in the living room of the residence, one pair of gray shorts from a pile of laundry on top of a washing machine outside of the residence, and a pair of black slippers outside the front door. No testimony set forth that officers further searched the residence for the items after they were identified, that officers delayed the search to obtain such information, or that the effectuation of the search warrant was complete and officers left the premises and had to return to obtain the items – the seizure of the items did not entail any greater intrusion on the premises. *See, e.g., Horton*, 496 U.S. at 141-42 ("If the interest in privacy has been invaded, the violation must have occurred before the object came into plain view and there is no need for an inadvertence limitation on seizures to condemn it.").

Accordingly, the Court finds that the items were discovered during a lawful search authorized by a valid warrant and appropriately seized pursuant to the plain view doctrine. Therefore, the Court will not suppress the items for trial.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Second Motion to Suppress. Further proceedings and asserted trial dates will be set upon the disposition of Defendant's remaining motion filed under seal.

October 2

**IT IS SO ORDERED** this 3rd day of September, 2019.

SERVICE ...........

I acknowledge that a copy of ...
original hereto was placed in the
court box of:

_Jihan Jaw·Poue_

Date: OCT 0 3 2019   Time: _____

Deputy Clerk, Superior Court of Guam

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

*People v. Acosta*
Case No.CF0640-18
Decision and Order